# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

Darrell Stephens,
    Petitioner

    vs.

Case No. 1:05cv243
(Weber, Sr.J.; Hogan, M.J.)

Wanza Jackson,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter is before the Court for ruling on respondent's motion to dismiss (Doc. 3), petitioner's response in opposition to the motion (Doc. 4), and respondent's reply to petitioner's response (Doc. 5).[1]

In the motion to dismiss (Doc. 3), respondent argues in part that the petition is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of:  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment

---

[1]Petitioner filed a motion to strike respondent's reply (Doc. 6), which has been denied by separate Order entered this date.

to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this action, petitioner is challenging his continued incarceration based on his March 31, 1992 conviction in the Hamilton County, Ohio, Court of Common Pleas upon his entry of guilty pleas to charges of felonious sexual penetration and rape. (*See* Doc. 3, Exs. 4-5). Petitioner was sentenced to concurrent prison terms of five (5) to twenty-five (25) years for the two offenses. (*Id.,* Ex. 5). Apparently, petitioner did not file an appeal from the judgment of conviction or sentence.

Nearly two years later on February 25, 1994, petitioner filed with the assistance of counsel a motion to resentence and/or for shock probation in the Hamilton County Common Pleas Court. (*Id.*, Ex. 6). By Orders entered February 25, 1994 and March 16, 1994, petitioner's motion was denied. (*Id.,* Exs. 7, 8). Respondent states that petitioner did not appeal these entries overruling his motion. (*Id.,* Brief, p. 2).

On November 22, 1994, petitioner's counsel filed a motion for new trial and/or to resentence based on "newly discovered evidence" with the trial court. (*Id.,* Ex. 9). The motion was overruled on December 7, 1994. (*Id.,* Ex. 12). Again, it appears that petitioner did not seek to appeal this ruling. (*See id.,* Brief, p. 3).

Next, on September 26, 1996, petitioner filed a pro se petition to vacate or set aside sentence and/or to modify his sentence. (*Id.,* Ex. 13). The petition was dismissed by the trial court on January 9, 1997. (*Id.,* Ex. 15). Petitioner appealed to the Ohio Court of Appeals, First Appellate District, which issued an Entry on September 19, 1997 sua sponte dismissing the appeal on the ground that petitioner's brief was not timely filed. (*Id.,* Ex. 16).

Apparently, petitioner took no further action to challenge his conviction or sentence until September 30, 2002, when he filed with the assistance of new counsel a motion to vacate his guilty plea pursuant to Ohio R. Crim. P. 32.1 in the Hamilton

2

County Common Pleas Court.  (*Id.,* Ex. 17).  In the motion, petitioner presented for the first time the argument that the Ohio Adult Parole Authority (OAPA) effectively breached the plea agreement between petitioner and the State when it retroactively applied "new parole consideration guidelines," enacted on March 1, 1998, to petitioner at his second parole eligibility hearing held on July 29, 1998. (*See id.*).  On October 1, 2002, the motion was overruled without opinion.  (*Id.,* Ex. 18).

Petitioner's counsel appealed this ruling to the Ohio Court of Appeals, First Appellate District.  On November 21, 2003, the Court of Appeals issued a Decision and Judgment Entry affirming the trial court's judgment.  (*Id.,* Ex. 21).  Proceeding pro se, petitioner next sought leave to appeal to the Ohio Supreme Court.  (*See id.,* Ex. 22).  On April 14, 2004, the Ohio Supreme Court declined jurisdiction to hear the case.  (*Id.,* Ex. 24).  Petitioner filed a motion for reconsideration, which was denied by the Ohio Supreme Court on May 26, 2004.  (*Id.,* Ex. 26).

Nearly eleven months later, petitioner initiated the instant federal habeas corpus action.  The Certificate of Service attached to the petition and signed by petitioner states that the petition was served on Ohio's Attorney General and petitioner's trial counsel on April 5, 2005; the petition was stamped as "filed" by the Court on April 11, 2005.  (Doc. 1).  Under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing.  *See, e.g., Jones v. Bertrand,* 171 F.3d 499, 502 (7th Cir. 1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir. 1999); *Spotville v. Cain,* 149 F.3d 374, 376-77 (5th Cir. 1998); *Burns v. Morton,* 134 F.3d 109, 112-13 (3rd Cir. 1998); s*ee also In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997).  In this case, absent evidence to the contrary, the Court assumes the petition was delivered to prison authorities and thus "filed" on April 5, 2005, the date petitioner states that it was served on Ohio's Attorney General and his trial counsel. *Cf. Burnett v. Birkett,* No. 00-10144-BC, 2002 WL 31748843, at *3 (E.D. Mich. Nov. 26, 2002) (unpublished) (citing *Hudson v. Martin,* 68 F.Supp.2d 798, 799 n.2 (E.D. Mich. 1999), *aff'd,* 8 Fed. Appx. 352 (6th Cir. Mar. 22, 2001)).

In the petition, petitioner alleges three grounds for relief.  (Doc. 1, pp. 5-6).  He contends in Ground One that the OAPA violated his constitutional right to due process by applying new parole eligibility guidelines to him, which amounted to a breach of his plea agreement with the State.  (Doc. 1, p. 5).  He claims in Ground Two that his "plea agreement was not knowingly, voluntarily, and intelligently entered into when the [OAPA] implemented a new parole guideline structure that

requires [him to] serve substantially more prison time 'before becoming eligible for parole.'" (*Id.*).  Finally, in Ground Three, he alleges that the "new parole guidelines implemented by the [OAPA] and used to [his] detriment . . . violate [the] Ex Post Facto Clause" of the Constitution.  (*Id.,* p. 6).

The Court must first determine which statutory provision set forth in 28 U.S.C. § 2244(d)(1) governs petitioner's claims and when the statute of limitations began to run in this case.   Respondent contends that if 28 U.S.C. § 2244(d)(1)(A) governs petitioner's claims, the petition is time-barred because petitioner, whose conviction became "final" before the AEDPA's enactment, had one year from the date of the statute's enactment or until April 24, 1997 in which to file his habeas corpus petition. (Doc. 3, p. 8).   Respondent further contends that if 28 U.S.C. § 2244(d)(1)(D) governs petitioner's claims, the petition is still time-barred because petitioner reasonably could have discovered the factual bases underlying his claims on July 29, 1998, when the OAPA applied the new parole guidelines to him at his second parole eligibility hearing and, therefore, had one year from that date, or until July 29, 1999 in which to file a federal habeas petition. (*Id.,* pp. 8-9).  In contrast, it is petitioner's position that 28 U.S.C. § 2244(d)(1)(A) governs his claims, but that the statute of limitations did not begin to run until the conclusion of the proceedings held on his motion to withdraw his guilty plea.  (Doc. 4, pp. 4-5).

As an initial matter, this Court disagrees with petitioner's contention that the statute of limitations did not start running until the proceedings held on his motion to withdraw his guilty plea had concluded.  Assuming, *arguendo,* that 28 U.S.C. § 2244(d)(1)(A) governs petitioner's claims as petitioner contends, his conviction became "final" before the AEDPA's enactment when the 30-day period for filing an appeal as of right to the Ohio Court of Appeals from the March 21, 1992 judgment of conviction and sentence expired.  *See* Ohio R. App. P. 4(A); *see also Goodballet v. Mack,* 266 F.Supp.2d 702, 705 (N.D. Ohio 2003).  As respondent has recognized, because petitioner's conviction became final before the AEDPA's enactment, petitioner was entitled to a one-year grace period in which to file a federal habeas corpus petition challenging his conviction and sentence.   In other words, petitioner was allowed a one-year period of time from the AEDPA's April 24, 1996 enactment date, or until April 24, 1997, in which to file his federal habeas petition.  *See Bronaugh v. Ohio,* 235 F.3d 280, 284-85 (6th Cir. 2000) (and cases cited therein).

Here, petitioner suggests that his conviction did not become "final" within the

meaning of 28 U.S.C. § 2244(d)(1)(A) until after the resolution of his motion to withdraw his guilty plea, because such a motion is considered part of the direct appeal process in Ohio.  He also suggests that, in any event, the motion to withdraw his guilty plea served to restart the running of the clock from zero.  He claims that there was no "adequate legal remedy" available in Ohio for him to pursue the grounds for relief asserted in the instant petition until August 2002, when the Ohio Supreme Court held in *State v. Bush,* 773 N.E.2d 522, 526 (Ohio 2002), that unlike other post-conviction remedies, a post-sentence motion under Ohio R. Crim. P. 32.1 to withdraw a plea "is not collateral but is filed in the underlying criminal case."

The petitioner in *Goodballet* raised essentially the same arguments asserted by petitioner herein.  These arguments were discussed and rejected by the district court in relevant part as follows:

> Goodballet . . . suggests that his conviction did not become final until after the resolution of his motion to withdraw his plea because he says this motion is part of the direct appeal process in Ohio.  Alternatively, he contends that the filing of his motion to withdraw his guilty plea reset the limitations period.  Specifically, Goodballet argues that because no time limitation exists in Ohio for the filing of his motion to withdraw his guilty plea, the entire time from his conviction date until the final resolution of his motion is tolled.  He cites *State v. Bush,* 96 Ohio St.3d 235, 773 N.E.2d 522, (2002) for this proposition.  Both arguments are incorrect.
>
> Goodballet correctly notes that the *Bush* court held that Ohio procedural rules prescribing a filing deadline for postconviction relief petitions do not govern postsentence motions to withdraw guilty pleas. . . .  However, the state procedural ruling does not reset the federal AEDPA filing deadline nor does it alter the final conviction date for federal habeas petition purposes.  For purposes of the AEDPA, the judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2254(d)(1)(A).  If the conviction did not become final until the highest state court denied a motion to withdraw a guilty plea, the one-year statute of limitations would be meaningless.  A petitioner could indefinitely extend the time for seeking habeas relief merely by delaying his motion to file a motion to withdraw his guilty plea.  The same would be true if the filing of such a motion

5

reset the limitations period.

Although the Sixth Circuit has not directly addressed whether a motion to withdraw a guilty plea resets the AEDPA limitations period and/or alters the final conviction date, its decisions in two other cases suggests that it does not.  First, the Sixth Circuit held that the filing of a delayed appeal tolls the running of the AEDPA one-year limitation but it does not reset the limitations period.  *Searcy* [*v. Carter,* 246 F.3d 515, 519 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001)].  A delayed appeal is part of the "direct review" of a case.  *Id.*  Moreover, like a motion to withdraw a guilty plea, a petitioner may file a delayed appeal anytime with the Ohio Supreme Court.  *See* Oh. Sup.Ct. R. II, Sec. 2(4)(a).  Because the party may file the delayed appeal anytime, effectively delaying the final judgment date, the court decided that filing such an appeal may toll the running of the one-year limitation, but does not restart the limitation period.  *Searcy,* 246 F.3d at 519.  Specifically, the court reasoned that allowing the filing of a delayed appeal to restart the limitation period:

> would effectively eviscerate the AEDPA's statute of limitations.  Leave to file a late notice of appeal can be sought at any time, even many years after conviction.  If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief.  The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*Id.* (quoting *Raynor v. Dufrain,* 28 F.Supp.2d 896, 898 (S.D.N.Y. 1998)).

Likewise, the Sixth Circuit held that an Ohio R.App. P. 26(B) application, though part of the direct appeal process, will not delay the starting of the AEDPA statute of limitations:

> It is important to note that [petitioner] will not be able to

>benefit from his delay in bringing a Rule 26(B) application to reopen direct appeal by requesting that § 2244(d)(1)(A)'s one-year statute of limitations not begin until after his Rule 26(B) application has run its course through the courts.  Instead, the statute of limitations is tolled only for that period of time in which the Rule 26(B) application is actually pending in the Ohio courts.

*Bronaugh*[, 235 F.3d at 285].

>Based on the above reasoning, the Court concludes that the filing of a motion to withdraw a guilty plea only tolls the limitations period and does not reset it.  It also does not affect the final conviction date for purposes of federal habeas petitions.  Accordingly, the statute of limitations began to run on April 24, 1996[, the date of the AEDPA's enactment,] and Goodballet had until April 24, 1997 to file a timely habeas petition.

*Goodballet,* 266 F.Supp.2d at 705-07.[2]

This Court is persuaded by the district court's well-reasoned decision in *Goodballet*.  Moreover, the Court rejects petitioner's argument that there was no

---

[2]It is noted that, in recent years, certain Sixth Circuit judges have expressed concerns about the developing case-law on the statute of limitations issue at least as it pertains to delayed applications for reopening of the appeal under Ohio R. App. P. 26(B).  In an unpublished decision--*Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, 8-10 (6th Cir. Sep. 2, 2003) (not published in Federal Reporter), a panel of the Sixth Circuit decided to disregard the published *Bronaugh* decision and held that under an erroneous, but binding, prior Sixth Circuit published decision addressing the separate issue of waiver, *White v. Schotten,* 201 F.3d 743, 752-53 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), the statute of limitations "begins to run anew at the conclusion of the 26(B) process" on delayed applications for reopening of the appeal.  A district judge in the Northern District of Ohio, further noted in *Smith v. Ohio Dep't of Rehabilitation & Correction,* 331 F.Supp.2d 605, 616-17 (N.D. Ohio 2004), that the answer to the question of whether an untimely-filed application for reopening under Ohio R. App. P. 26(B) delays the start of the running of the statute of limitations under § 2244(d)(1)(A), or merely tolls its running under § 2244(d)(2), "is in a state of flux."  This Court concludes, however, that the published *Bronaugh* decision, which directly answered the question whether a delayed application for reopening starts or tolls the running of the statute of limitations, remains good law and still controls the resolution of the issue at hand.

"adequate legal remedy" available in Ohio, and that he therefore was unable to raise the claims alleged in the instant petition, until the Ohio Supreme Court's *Bush* decision came out in August 2002.

Contrary to petitioner's contention, petitioner could have pursued his grounds for relief in the state courts by way of a petition for post-conviction relief under Ohio Rev. Code § 2953.21. Although as petitioner points out, the deadline for filing a post-conviction petition had passed when the new parole guidelines were applied by the OAPA to petitioner, Ohio Rev. Code § 2953.23 expressly provides that the trial court may consider a petition filed after the deadline has expired if (1) the petitioner shows he "was unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief," and (2) the petitioner shows by clear and convincing evidence that, but for the constitutional error . . ., no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted." Therefore, petitioner could have pursued state post-conviction relief prior to August 2002 by arguing (1) he was unavoidably prevented from discovering the facts underlying his claims for relief until July 29, 1998, when the OAPA denied him release on parole under the new parole guidelines; and (2) that application of the new parole guidelines to him constituted clear and convincing evidence of a breach of his plea agreement with the State, or of an Ex Post Facto Clause violation, or that his guilty plea was not knowingly, voluntarily or intelligently entered with understanding of the consequences of the plea. In any event, even assuming as petitioner argues that the state post-conviction remedy was not available to him to pursue his grounds for relief, petitioner alternatively could have raised his claims to the state courts by way of an application for writ of habeas corpus under Ohio Rev. Code § 2725.04. *Cf. Brewer v. Dahlberg,* 942 F.2d 328, 337-40 (6th Cir. 1991).

Accordingly, in sum, the Court concludes that to the extent both respondent and petitioner argue that 28 U.S.C. § 2244(d)(1)(A) governs petitioner's claims for habeas relief, the statute of limitations ran during the one-year grace period afforded prisoners whose convictions became "final" before the AEDPA's enactment on April 24, 1996. Specifically, under § 2244(d)(1)(A), the statute commenced running on April 24, 1996 and expired one-year later on April 24, 1997 absent the application of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) or any other applicable tolling principles.

During the one-year limitations period, petitioner was entitled to the benefits

of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998). The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

In this case, petitioner filed a pro se petition to vacate or set aside sentence on September 26, 1996 (*see* Doc. 3, Ex. 13), which arguably served to toll the statute of limitations under 28 U.S.C. § 2244(d)(2). However, those proceedings concluded on November 3, 1997, when the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' September 19, 1997 final entry sua sponte dismissing petitioner's appeal in that matter. (*See id.,* Ex. 16); *see also* Rule II, § 2(A)(1)(a), Rules of Practice of the Supreme Court of Ohio. Petitioner took no further action to contest his conviction or sentence until September 30, 2002, over four years after the statute of limitations had run its course. Therefore, as respondent contends, it appears the instant petition would be deemed time-barred if 28 U.S.C. § 2244(d)(1)(A) were found to govern his grounds for relief.

Although petitioner argues that 28 U.S.C. § 2244(d)(1)(A) governs the instant petition, this Court adopts the position, which indeed is more favorable to petitioner, that § 2244(d)(1)(D) instead controls. Under that provision, the statute of limitations did not commence running until petitioner could have discovered the factual bases underlying his claims for relief through the exercise of due diligence. As respondent

contends, it appears from the present record that through the exercise of due diligence, petitioner could have discovered the factual predicate for his claims on July 29, 1998, the date of his second parole eligibility hearing where the new parole guidelines were applied by the OAPA to deny him parole.  The statute of limitations, therefore, began running the following day on July 30, 1998, *see* Fed. R. Civ. P. 6(a); *Bronaugh,* 235 F.3d at 285, and ended one year later absent the application of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) or any other applicable tolling provisions.

In this case, petitioner took no action within the one-year limitations period commencing July 30, 1998 to challenge his conviction or sentence.  Therefore, the statute of limitations expired on July 30, 1999.  Petitioner's motion to vacate his guilty plea filed over three years later on September 30, 2002, could not serve to toll the running of the statute, which had long since run its course.  Accordingly, the Court concludes that even under the more favorable provision set forth in 28 U.S.C. § 2244(d)(1)(D), the instant petition "filed" on April 5, 2005, nearly five years after the expiration of limitations period, is time-barred.

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988).  In determining whether the statute of limitations should be equitably tolled, the court must consider the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151).  The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling.  *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)).  The absence of prejudice may only be considered when other factors of the test are met.  *Id.*

Petitioner has not attempted to apply the five *Dunlap* factors to this case.

Petitioner does not argue and there is no evidence in the record to suggest that he was ignorant, or lacked notice or constructive knowledge, of the one-year filing requirement for federal habeas petitions.  Even assuming, *arguendo,* that he lacked such knowledge, it is well-settled that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Allen v. Yukins,* 366 F.3d 396, 403 (6th Cir.), *cert. denied,* 125 S.Ct. 200 (2004) (quoting *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991)).  In any event, it would have been unreasonable for petitioner to remain ignorant of the filing requirement, which has been in effect since April 1996, until April 2005 when he filed the instant petition.

In addition, petitioner has failed to demonstrate that he acted with due diligence in pursuing his state and federal remedies.  Petitioner's only argument is that it was not until August 28, 2002, when the Ohio Supreme Court issued its decision in *Bush,* that he was provided an "adequate legal remedy" to pursue his grounds for relief. Petitioner contends that after the *Bush* decision was entered, he "diligently filed the Motion to Vacate the Guilty Plea, diligently, and timely filed the Notice of Appeal from the trial court[']s ruling, diligently appealed to the Ohio Supreme Court in a timely manner after the appellate court overruled the appeal, and diligently filed the instant petition before this District Court." (Doc. 4, p. 6).  As discussed *supra* p. 8, there were remedies available in Ohio for petitioner to pursue his grounds for relief prior to the Ohio Supreme Court's *Bush* decision.  The fact that petitioner may have "diligently" pursued his claims after *Bush* was decided does not explain his failure to do so in the years preceding that decision.  Therefore, petitioner has not demonstrated he is entitled to equitable tolling in this case under *Dunlap*.

Accordingly, in sum, the Court concludes that under the either the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) or the applicable and more favorable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(D), the statute of limitations expired in this case years before petitioner instituted the instant federal habeas corpus action.  Neither the tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles serve to permit review of petitioner's time-barred claims for relief.  It is, therefore, RECOMMENDED that respondent's motion to dismiss (Doc. 3) be GRANTED, and petitioner's petition for writ of habeas corpus (Doc. 1) be DISMISSED with prejudice as time-barred.

**IT IS THEREFORE RECOMMENDED THAT:**

11

1.  Respondent's motion to dismiss (Doc. 3) be GRANTED, and petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DISMISSED with prejudice as time-barred under 28 U.S.C. § 2244(d).

2.  A certificate of appealability should issue with respect to any Order adopting this Report and Recommendation to dismiss the petition with prejudice on procedural statute of limitations grounds, because pursuant to the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would find it debatable (1) whether this Court is correct in its procedural ruling, and (2) whether petitioner has stated viable constitutional claims for relief in the petition to the extent that the issues presented therein are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack,* 529 U.S. at 484 (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith" and, therefore, GRANT petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:   9/22/2005                          s/Timothy S Hogan
     cbc                                   Timothy S. Hogan
                                  United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\05-243mtd-sol.grant.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Darrell Stephens,
     Petitioner,

                                        Case No. 1:05cv243

     v.                                 (Weber, Sr.J.; Hogan, M.J.)

Wanza Jackson,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).